

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AAS:CRH
F#2017R01183

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 29, 2017

By Hand Delivery and ECF

The Honorable James Orenstein
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Parveg Ahmed
               Docket No. 17-MJ-766 (JO)

Dear Judge Orenstein:

      The defendant Parveg Ahmed is scheduled to appear before the Court at 2:00 p.m. on August 29, 2017, for his initial appearance and detention hearing. For the reasons set forth below, the government respectfully requests that the Court enter a permanent order of detention pending trial, absent any combination of bail conditions that would ensure the defendant's continued appearance before the Court and in light of the significant danger that the defendant's pretrial release would pose to the community at large.

I.      Procedural and Factual Background

      Ahmed was arrested last night pursuant to a criminal complaint charging him with attempting to provide material support to the Islamic State of Iraq and al Sham ("ISIS"), in violation of Title 18, United States Code, Section 2339B. A copy of the complaint, authorized by Your Honor, is attached hereto as Exhibit A.

      A.    ISIS

      ISIS is a foreign terrorist organization that, since 2013, has claimed credit for numerous terrorist activities, including seizing Mosul, a city in northern Iraq, launching rocket attacks on eastern Lebanon in March 2014, the November 2015 terrorist attacks in Paris, France, and the March 2016 suicide bombings in Brussels, Belgium, among many others. These terrorist activities are part of ISIS's broader goal of forming an Islamic state or

"caliphate"[1] in Iraq and Syria.  On or about October 15, 2004, the United States Secretary of State designated al- Qaeda in Iraq (AQI), then known as Jam 'at al Tawid wa' al-Jahid, as a Foreign Terrorist Organization (FTO) under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive order 13224.  On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant (ISIL) as its primary name. The Secretary of State also added the following aliases to the FTO listing: The Islamic State of Iraq and al-Sham ("ISIS" – which is how the FTO will be referenced herein), The Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furquan Establishment for Media Production. On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS.  To date, ISIS remains a designated FTO.

      B.      <u>The Defendant's Attempt to Join ISIS</u>

The investigation has revealed that the defendant espouses radical ideology and has been an ISIS supporter since at least 2014.  Beginning in 2014, the defendant publicly expressed his support of ISIS through social media accounts.  For example, in October 2014, the defendant posted the message, "Who are Jihadis? Muslims who fight to establish the Sharia IN THEIR OWN LANDS, wanted by MAJORITY of the people. USA are the real terrorists."   Later, in February 2015, the defendant publicly wrote, "The side of Good is Islam & the Caliphate If you're not with the Muslims, you're ignorantly, irrelevantly, & arrogantly on the side of Evil."[2]  In March 2015, the defendant posted that "The war on the Islamic State is a war of the ideologies: Democracy/Capitalism v. Shariah Media propaganda/lies villifying the enemy 'ISIS'" and also sent a message to another user of the social media platform, stating "that's what secularism will get you.  The only country still working in reverance to the Almighty is the Islamic State."  In an interview with FBI agents, the defendant  admitted that he had posted the social media messages cited above.  A subsequent search of the defendant's personal computer revealed that the defendant also viewed or listened to sermons by the radical Islamic clerics Anwar al-Awlaki and Abdullah el-Faisal.  Anwar al-Awlaki was a United States-born radical Islamic cleric and prominent leader of the foreign terrorist organization al Qaeda in the Arabian Peninsula, who was killed on or about September 30, 2011.  Abdullah el-Faisal is a Jamaican-born radical Islamic

---

[1] "Caliphate" is a term that can be used to refer to ISIS's self-proclaimed system of religious governance, with Abu Bakr al-Baghdadi as the caliphate's self-proclaimed leader.

[2] All citations to electronic communications include original grammar, spelling, and punctuation.

cleric, who was found guilty in the United Kingdom of, among other things, solicitation to commit murder, for preaching to followers to kill individuals, including Americans, because he deemed them to be enemies of Islam. Review of the defendant's computer also suggested that the defendant listened to sermons preaching that followers should enter "jihad," that living in the ISIS "Caliphate" is mandatory, and that killing "apostates" is supported by the Quran.

On or about June 1, 2016, the defendant flew from the United States to Saudi Arabia, ostensibly for the purpose of celebrating an Islamic religious holiday. Shortly thereafter, on or about June 9, 2017, the defendant informed his traveling partners that he did not feel well and wanted to stay inside that day. When the traveling partners returned, the defendant and another traveling partner ("CC-1") had disappeared. The investigation revealed that, soon after their departure from Saudi Arabia, the defendant and CC-1 were detained in a Middle Eastern country bordering Syria soon after they had left their party in Saudi Arabia.

Investigating agents subsequently gathered substantial additional evidence proving that the defendant and CC-1 attempted to join ISIS in Syria as foreign fighters. On August 25, 2017, FBI agents conducted an interview of CC-1 in the Middle Eastern country where he had been detained. After waiving his <u>Miranda</u> rights, CC-1 informed the agents, in sum and substance, that (1) the defendant and CC-1 had travelled by cab from Saudi Arabia to the capital of the Middle Eastern country bordering Syria; (2) the defendant called for a cab to Idlib – an area in Syria presently under insurgent control[3]; and (3) the defendant engaged in pro-ISIS proselytization of CC-1, including telling CC-1 "they're good and I should follow." Additionally, a search of devices found in the possession of the defendant and CC-1 at the time of their apprehension revealed, among other things:

- Images associated with ISIS and violent jihad, such as a picture of five men hanging by their necks with the caption "Gay men to be hanged," text justifying attacks on the World Trade Center, and a picture of the leader of ISIS, Abu Bakr al-Baghdadi;

- Messages sent to third parties stating that the user of the phone was "looking to make hijra," meaning seeking to emigrate to ISIS-controlled territories, and seeking to communicate with the third parties through encrypted messaging applications;

- A message stating "[W]e have made it to Dawlatul Islam [ISIS] in Syria. In sha Allah [God willing] we will join the Jihad very soon and in Sha Allah

---

[3] CC-1 claimed that the defendant meant to say "Irbid," which is a city in Jordan.

3

[God willing] we will then join the ranks of the Shuhuda [martyrs]. The West has invaded the land of the Muslims and is constantly attacking it."; and,

- Internet browsing history to sites reflecting maps of areas currently under ISIS control.

III. The Court Should Enter a Permanent Order of Detention

The government respectfully requests that the Court enter a permanent order of detention on grounds of dangerousness and risk of flight.

A. Legal Standard

Federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or poses a risk of flight. See 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987). The government is entitled to proceed by proffer. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).

The factors to be considered in determining whether the applicable standard has been met include: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). Because the defendant is charged with attempting to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B, there is a statutory presumption in favor of detention. See 18 U.S.C. §§ 3142(e)(3)(C); 2332b(g)(5)(B).

B. Analysis

As set forth above, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond based on the nature of the charge against him. Moreover, the factors referenced above weigh heavily against pre-trial release. The charged offense is serious, particularly in light of the extremely violent nature of the terrorist group the defendant attempted to join and the group's international reach. Indeed, in listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider, among other factors, whether the crime charged is a federal crime of terrorism. See 18 U.S.C. § 3142(g)(1).

4

The weight of the evidence is also strong. The statements made on social media and the recordings found on the defendant's computer demonstrate a strong knowledge of ISIS, an understanding of their terrorist activities, and a desire to support that organization. The actions taken by the defendant—traveling to the Middle East, leaving his travel party, and being found in a country immediately bordering Syria—reflect a clear intent to travel to Syria to join ISIS. Finally, the statements of CC-1 regarding the defendant's pro-ISIS preaching, and the evidence found on the electronic devices reflecting searches for maps of ISIS-controlled area, images of ISIS-related propaganda, and most significantly, a written message expressly stating that the defendant and CC-1 were joining ISIS in Syria to wage violent jihad constitute substantial evidence of the defendant's attempted support of this foreign terrorist organization.

The defendant's history and characteristics also confirm that he is a danger to the community and presents a substantial risk of flight. The defendant poses a danger to the community because his attempt to join ISIS reflects his embrace of an extremely violent ideology. At the time of his apprehension, the defendant possessed a phone containing a written message that he and CC-1 were joining ISIS to become "martyrs," indicating a willingness to die for his violent belief system. Were the defendant to be released, there is every reason to expect he might continue his effort to support ISIS by, for example, engaging in acts of terrorism on American soil. Not even the standard conditions of pretrial release would ensure public safety, as ISIS supporters have repeatedly used household items, such as cooking knives or axes, with deadly effect. Indeed, the defendant viewed or listened to sermons by the radical cleric Anwar al-Awlaki, who is frequently identified as an inspiration for United States-based terrorist attacks. See, e.g., Associated Press, "US terror attacks' common denominator: Anwar al-Awlaki" (Sept. 25, 2017). Moreover, one of the devices found in the defendant's possession contained a number of images associated with ISIS and violent jihad, as well as a text justifying the World Trade Center attacks.

With respect to flight risk, while the defendant is a United States citizen, he has traveled abroad on multiple occasions, and has family connections in foreign countries. His decision to travel from Saudi Arabia to a country bordering Syria indicates a willingness to cross international borders, even at the risk of being arrested. The circumstances of the defendant's apprehension overseas suggests that the defendant is willing to disregard any legal constraints to provide further support to ISIS.

5

IV.     Conclusion

        For the foregoing reasons, the government respectfully requests that the Court find the defendant to be a danger to the community and a risk of flight, and order that he be permanently detained pending trial.

        Respectfully submitted,

        BRIDGET M. ROHDE
        Acting United States Attorney

By:    /s/ Craig R. Heeren
        Craig R. Heeren
        Alexander A. Solomon
        Assistant U.S. Attorneys
        (718) 254-7000

cc:     Clerk of Court (by ECF)

6