

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:CRH/MAA
F.#2017R01183

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 13, 2022

By ECF & Email

The Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Parveg Ahmed
                Docket No. 17-CR-378 (AMD)

Dear Judge Donnelly:

      The government respectfully submits this letter regarding the sentencing of defendant Parveg Ahmed scheduled for December 20, 2022. On June 20, 2018, the defendant pleaded guilty, pursuant to a plea agreement, to a single-count indictment (the "Indictment") charging him with attempting to provide material support to the Islamic State of Iraq and al-Sham ("ISIS"), a designated foreign terrorist organization ("FTO"), in violation of 18 U.S.C. § 2239B.

      The government respectfully submits that the Court should sentence the defendant within the applicable recommended Guidelines range, which in this case is 240 months' imprisonment. A sentence within the Guidelines range is both appropriate and necessary here. As detailed below, as well as in the defendant's guilty plea and the Presentence Investigation Report ("PSR"), the defendant and a co-conspirator whom he recruited traveled from the United States to Saudi Arabia and then Jordan en route to Syria. But for their apprehension, the defendant and his co-conspirator would have completed their journey to join ISIS in Syria to become, in the defendant's own words, "shuhada" – martyrs – for the terrorist group. A Guidelines sentence is necessary both to prevent this defendant from engaging in future terrorist activity and to deter others from attempting to do the same.

I.     Background

The following information is taken from the PSR and other evidence gathered as part of the investigation and prosecution of the defendant.

    A.     The Defendant's Attempt to Provide Material Support to ISIS

        1.     The Defendant's Radicalization

Beginning at least as early as 2014, the defendant adopted a radical form of Islam and began publicly expressing his support for ISIS online. ISIS is an FTO that, since 2013, has conducted numerous terrorist attacks around the world in furtherance of its goal of forming an Islamic state, also referred to as a "caliphate" or "khilafah" by ISIS supporters. At various times, ISIS has controlled territory in Syria, Iraq, and Libya, and it maintained a presence in other countries as well. ISIS has executed and claimed credit for numerous deadly terrorist activities, including attacks against Americans in the United States and against Westerners abroad, and it was the deadliest terrorist organization in the world between 2014 and the end of the Indictment period, during which the defendant sought to join and die for the group.

Beginning in October 2014, the defendant repeatedly expressed his support for ISIS on social media. For example, between October 2014 and March 2015, the defendant wrote the following on social media:

- Who are Jihadis? Muslims who fight to establish the Sharia IN THEIR OWN LANDS, wanted by MAJORITY of the people. USA are the real terrorists.

- The side of Good is Islam & the Caliphate[.] If you're not with the Muslims, you're ignorantly, irrelevantly, & arrogantly on the side of Evil.

- The war on the Islamic State is a war on the ideologies: Democracy/Capitalism v. Shariah Media propaganda/lies vilifying the enemy 'ISIS'.

PSR ¶ 4 (emphasis in original).

By March 2015, during the period the defendant repeatedly praised ISIS online, ISIS had already engaged in a litany of mass-publicized, deadly terrorist attacks on innocent civilians, including numerous mass-casualty bombings in Iraq that killed more than 1,000 people and multiple video-recorded beheadings of journalists, including Americans, which ISIS then used as propaganda tools to recruit more jihadis to kill for it. To cite just one example, in February 2015, ISIS released online a graphic video of its members burning to death in a cage a captured Jordanian pilot, which ISIS used as a recruitment tool and which was widely publicized in media around the world. Additionally, and as detailed in the PSR, during this same period the defendant

was consuming violent jihadist propaganda online, including sermons by the radical Islamist extremist cleric Anwar al-Awlaki. See id.

On or about January 27, 2016, the defendant was interviewed by law enforcement officials regarding his concerning statements in support of ISIS and radical jihadism. The defendant initially denied posting statements in support of ISIS or other Jihadist movements, but after being confronted with some of the specific statements found on the defendant's social media, the defendant admitted to making these statements. The defendant claimed that the statements were made at a low point in his life and at a time when he was smoking a large amount of marijuana. See id. at ¶ 5.

Subsequent investigation revealed that, in addition to using social media to proselytize in support of ISIS and its radical jihadist beliefs, the defendant also tried to convert his own family to ISIS's cause. As detailed in the government's May 2020 memorandum in support of the defendant's detention (ECF No. 33), the defendant's family members explained that the defendant grew more devoutly religious than typical for their family, grew a beard that is consistent with a more strict interpretation of Islamic law, and engaged in other strict religious practices. The defendant attempted to convince his family to move to ISIS-controlled territory in the Middle East. He informed his family members, in sum and substance, that it would be better for his family to live in ISIS-controlled territory, and that he believed the Quran required them to live in ISIS-controlled territory. The defendant also told his family members, in sum and substance, that "there was legitimacy to [ISIS's] violence upon people." At least one family member also observed the defendant watching what appeared to be an ISIS propaganda video involving individuals being burned to death.

In June 2017, the defendant flew from the United States to Saudi Arabia. After the defendant arrived in Saudi Arabia in the summer of 2017, he feigned illness to his travel companions and, along with another co-conspirator who the defendant recruited, he attempted to travel to ISIS-controlled territory in Syria to join, fight and die for ISIS. See PSR ¶¶ 6-7. The defendant was stopped and detained after he and his co-conspirator crossed into Jordan, en route to Syria.

Devices recovered from the defendant and his co-conspirator revealed violent ISIS-associated images, including a photo of five men hanging by their necks with the caption "Gay men to be hanged," as well as texts justifying the September 11, 2001 World Trade Center attacks and a photo of ISIS's then-leader Abu Bakr al-Baghdadi. One of the devices recovered from the defendant and his co-conspirator contained messages to third parties indicating their desire to "make hijrah," the term used by jihadist extremists to travel to ISIS-controlled territory, as well as a message stating "[W]e have made it to Dawlatul Islam [ISIS] in Syria. In sha Allah [God willing] we will join the Jihad very soon and in Sha Allah [God willing] we will then join the ranks of the Shuhada [martyrs]. The West has invaded the land of the Muslims and is constantly attacking it." See id. at ¶ 7. By the middle of 2017, the defendant, who was steeped in the knowledge of ISIS, its propaganda and its extraordinary violence, knew exactly how lethal the group was and what it meant to join and fight for ISIS.

3

After initially being detained abroad, the defendant was arrested by FBI agents at John F. Kennedy Airport on or about August 28, 2017. He pleaded guilty to the Indictment in June 2018.

II.  Applicable Law

It is settled law that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In doing so, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). "When a factor is already included in the calculation of the [G]uidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation." United States v. Sindima, 488 F.3d 81, 87 (2d Cir. 2007) (quotation omitted, alterations in original). "[W]here the sentence is outside an advisory Guidelines range, the court must also state 'the specific reason' for the sentence imposed, in open court as well as in writing – 'with specificity in a statement of reasons form' that is part of the judgment." United States v. Aldeen, 792 F.3d 247, 251-252 (2d Cir. 2015), as amended (July 22, 2015) (quoting 18 U.S.C. § 3533(c)(2)).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct; [and]
>
> (C) to protect the public from further crimes of the defendant.

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, 18 U.S.C. § 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts. To the extent

4

there remain any open issues as to the correct Guidelines range, the Court should first make any necessary finding to arrive at the correct range. Nevertheless, however the Court arrives at the correct Guidelines range, it still must fashion a sentence that meets the criteria of Section 3553(a) under the specific facts of this case.

### III. The Advisory Guidelines Sentence

In the PSR, the United States Probation Department ("Probation") calculated the defendant's advisory Guidelines sentencing range as follows:

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. § 2M5.3) | | 26 |
| Plus: | Material Support with Intent, Knowledge or Reason to Believe They Were To Be Used to Commit Violent Act (§ 2M5.3(b)(1)(E)) | +2 |
| Plus: | Terrorism Enhancement (§ 3A1.4(a)) | +12 |
| Plus: | Organizer/Leader Enhancement (§ 3B1.1) | +2 |
| Minus: | Timely Acceptance of Responsibility (§ 3E1.1(a)-(b)) | -3 |
| **Total Offense Level** | | **39** |

See PSR ¶¶ 15-24. Probation also correctly determined that the defendant's criminal history category is VI because the offense involved, or was intended to promote, a federal crime of terrorism. See id. at ¶ 27 (citing U.S.S.G. § 3A1.4(b)). Thus, the defendant's advisory Guidelines range is 360 months to life imprisonment. See id. at ¶ 61. Because the count of conviction has a statutory maximum sentence of 240 months (20 years), the defendant's effective Guidelines range is 240 months' imprisonment. See id.

The defendant disputes the application of the organizer enhancement. See Def.'s Sent Mem at 7 n.6. Because the application of the enhancement will not alter the defendant's Guideline range – without this enhancement, the applicable Guidelines range would still be 360 months to life, and the effective range still 240 months – the Court does not need to definitively resolve whether the enhancement applies. Cf. United States v. Crosby, 397 F.3d 103, 112 (2d Cir. 2005) (explaining that Court need not resolve Guideline issue where it determines it would not affect its sentencing determination). However, as discussed further below, the government respectfully submits that the defendant's more substantial role in the criminal conduct, relative to the role of his co-defendant, is one of the factors that the Court should consider in imposing a Guidelines sentence of 240 months.

### IV. The Court Should Sentence The Defendant To A Guidelines Sentence

The sentence imposed on the defendant must reflect the seriousness of the conduct, deter the defendant specifically from committing further crimes, deter others from traveling to join

foreign terrorist groups such as ISIS and conducting attacks on behalf of or at the direction of terrorist groups, and promote respect for the law. Each of these factors strongly supports a Guidelines sentence of 20 years' imprisonment for the defendant.

As the facts described above indicate, the criminal conduct at issue is exceptionally serious. The defendant's support for ISIS amounted to far more than that of a confused young person malcontented with the politics in the United States, as the defendant claimed in his self-serving January 2016 interview with the FBI – the same interview in which the defendant also lied about his pro-ISIS social media activity. The defendant put his support for the deadliest terrorist organization in the world into action; he did not just post support for the group, he sought to convert his family to ISIS's cause. Following that, he recruited a co-conspirator with a documented history of mental health issues to travel abroad to join ISIS with him. The defendant then took the final steps toward fulfilling his goal, breaking free from his family on their trip to Saudi Arabia, traveling from Saudi Arabia to Jordan, and seeking to continue on to ISIS-controlled territory in Syria with the co-conspirator he had recruited. The writings recovered from the defendant's and his co-conspirator's devices following their arrest leave no ambiguity about their plan; it was to join, fight and die for ISIS as "martyrs" – people killed in the name of ISIS. In short, the defendant's crime is extraordinarily serious and alone supports a Guidelines sentence as both necessary and appropriate.

The sentence in this case should also be sufficiently serious to deter the defendant from committing future crimes, as well as to deter others contemplating similar criminal conduct from joining a foreign terrorist organization to wage violent jihad. While the defendant's current work with a counselor associated with the DEEP program during his pre-sentence detention is a potential step toward the defendant's ultimate rehabilitation, it is also worth noting that the defendant previously falsely feigned a lack of interest in ISIS before attempting to join the group. Indeed, as detailed in the PSR, the defendant in January 2016 indicated to FBI agents that he did not have an interest in ISIS and that he had been drawn to the terrorist group and its online propaganda material when he was at a low point in his life. See PSR ¶ 5. Approximately 18 months after he portrayed himself as a victim of ISIS propaganda no longer interested in the group, the defendant recruited his co-conspirator to join him in traveling abroad to join, fight and die as a martyr for ISIS, with the stated goal of "join[ing] the jihad" and "join[ing] the ranks" of ISIS's martyrs. Accordingly, the defendant's recent claimed strides at rehabilitation – while admirable if true – must be considered in the context of his prior false disavowals of ISIS.

The defendant disputes the characterization that he recruited his co-conspirator, but the facts bear this out. The defendant became radicalized and intent on supporting ISIS in 2014. It was not until 2017, after his original (and false) disavowal of the FTO, that the defendant involved his co-conspirator in the plan to join up with ISIS in Syria. The device primarily used by the conspirators to make contact with other ISIS supporters, and to write their joint martyrdom letter, belonged to Ahmed. Thus, while the co-conspirator bears his own substantial culpability for his conduct, the facts demonstrate that the defendant involved his co-conspirator in this scheme, and doing so should weigh in favor of a serious, Guidelines sentence.

6

A Guidelines sentence in this case would also be proportionate with sentences imposed for other similar conduct in the United States. For example, in United States v. Saleh, No. 15-CR-517 (WFK), the defendant was sentenced to 360 months' imprisonment for attempting to provide material support to ISIS after making several attempts to travel overseas and join ISIS. In United States v. Redzepagic, No. 17-CR-228 (DRH), the defendant, who also made several unsuccessful attempts to travel and join ISIS, pled guilty to providing material support to ISIS and al-Nusrah Front, and received a 200 month term of imprisonment. In neither of these cases were the defendants able to depart the United States to travel to join ISIS, despite multiple efforts. Here, the defendant traveled to Saudi Arabia and then Jordan in his effort to join ISIS, expressed avowed interest in violence and unambiguous intent to support ISIS by dying as a martyr for ISIS's cause, and recruited another individual to join him in this deadly mission. For this reason, a Guidelines sentence of 20 years' imprisonment is appropriate.



Finally, the Court should be guided by the Second Circuit's summary of the importance of a Guidelines sentence in cases involving crimes of terrorism:

> We conclude by underscoring that the Guidelines, while only advisory, appropriately reflect Congress's considered judgment that terrorism is different from other crimes. "[T]errorism represents a particularly grave threat because of the dangerousness of the crime



> and the difficulty of deterring and rehabilitating the criminal." Moreover, when it comes to sentencing terrorism, Congress and the United States Sentencing Commission "plainly intended for the punishment of crimes of terrorism to be significantly enhanced without regard to whether, due to events beyond the defendant's control, the defendant's conduct failed to achieve its intended deadly consequences." Thus, in determining what constitutes a "sufficient" sentence for a terrorist defendant whose conduct did not result in death or physical injury, a sentence at the high end of the applicable range may plainly be reasonable if supported by the balance of § 3553(a) factors.

United States v. Mumuni Saleh, 946 F.3d 97, 112-13 (2d Cir. 2019). The government respectfully submits that, consistent with the Circuit's guidance, a Guidelines range is an appropriate sentence in this case.

    V.    <u>Conclusion</u>

In sum, the need for punishment for the defendant's offense, the need for specific as well as general deterrence and the need to protect the public compels a Guidelines sentence of 20 years' imprisonment here. The government respectfully requests that the Court impose such sentence.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/ Craig R. Heeren
      Craig R. Heeren
      Meredith A. Arfa
      Assistant U.S. Attorneys
      (718) 254-7000

cc:    Clerk of Court (by ECF)
       Counsel of Record for the Defendant (by email)