**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

December 16, 2022

**By ECF**

Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Parveg Ahmed*, 17 CR 378 (AMD)
        (Reply Sentencing Memorandum of Parveg Ahmed)

Dear Judge Donnelly,

In his earlier sentencing memorandum (Dkt. No. 54), Mr. Parveg Ahmed detailed the many reasons why a sentence of the five-and-a-half years (66 months) already served in prison, followed by an additional seven years (84 months) of supervised release, is sufficient, but not greater than necessary, to comply with the factors guiding federal sentencing.[1] Mr. Ahmed has put in the work and effort necessary to change his life and his future. Indeed, Mr. Ahmed's rehabilitation and rejection of his prior path is so considered and sincere that independent Forensic Psychologist Dr. Kostas A. Katsavdakis has concluded that Mr. Ahmed poses a low risk of recidivism or community danger if released to a half-way house, and that even this low risk can readily be managed through non-incarceratory means such as continued mental health counseling and related treatment. *See* Katsavdakis Report (Dkt. No. 54, Ex. A).

---

[1] Mr. Ahmed also takes this opportunity to provide a complete copy of a letter written by a fellow detainee at MDC Brooklyn, attached as Exhibit A. A truncated copy of this letter was inadvertently included in Dkt. No. 54, Ex. E.

The government scarcely acknowledges Mr. Ahmed's efforts towards rehabilitation and doubts the authenticity of his transformation. *See* Govt. Sentencing Letter at 6 (Dkt. No. 55). In doing so, the government ignores all the evidence of Mr. Ahmed's rehabilitation and remorse. The government's regrettable decision to pretend none of this evidence exists, and to focus instead on what Mr. Ahmed told the FBI in January 2016 (*id.*), is precisely backward.[2] "[A] court's duty is *always* to sentence the defendant as he stands before the court *on the day of sentencing*." *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002) (emphasis added). Accordingly, it is the many concrete and undeniable steps Mr. Ahmed has taken since his arrest to reject radical Islam, and address the circumstances that made him susceptible to radicalization in the first place, that is the "most probative [sentencing] information available" (*United States v. Rose*, 379 F. Supp. 3d 223, 233-234 (S.D.N.Y. 2019)) and is "fundamental" to arriving at an appropriate individualized sentence (*Pepper v. United States*, 562 U.S. 476, 477 (2011)).

Taken together, the evidence provided the Court conclusively shows that the federal sentencing goals – rehabilitation, specific and general deterrence, punishment – already have been, or will be, met by the sentence requested by Mr. Ahmed. (Dkt. No. 54. at 13-19, Ex. A-H). Thus, the Court should impose the requested non-guidelines sentence, not the much greater than necessary sentence the government seeks.

Mr. Ahmed also previously explained that the guidelines sentence of twenty years

---

[2]   In 2016, Mr. Ahmed and the rest of his family were stopped at JFK airport upon their return from visiting extended family in Bangladesh. The family waited while Mr. Ahmed was interviewed by FBI agents, during which Mr. Ahmed misled those agents about his interest in ISIS. However, there is quite a distance between misleading agents in a relatively short interview and the long-term efforts at rehabilitation Mr. Ahmed has shown over the more than 5 years since his arrest. Further, the sincerity of Mr. Ahmed's changed beliefs has been tested over numerous interview sessions with treating social workers and Dr. Katsavdakis, a forensic psychologist chosen by counsel to evaluate Mr. Ahmed on the advice of the government.

requested by the government is unreasonable because it would create an unwarranted and inappropriate sentencing disparity. (Dkt. No. 54 at 19-21). Specifically, courts usually impose such lengthy sentences, if at all, on defendants who attempt to commit high-casualty terrorism attacks on US soil. *See, e.g., United States v. Naji*, No. 16-CR-653 (FB) (20-year sentence for materially supporting ISIS by trying to explode a truck bomb in Times Square) and *United States v. Juraboev, et al.* No. 15-CR-95 (WFK) "(15-year sentence for defendant Saidakhmetov, an ISIS-affiliated individual, who "repeatedly stated his intent to engage in acts of terrorism in the United States.") (Gov't Detention Memo., Dkt. No. 6 at 3).[3]

By contrast, defendants like Mr. Ahmed, who are convicted of attempting to travel to foreign countries to support terrorist organizations, have received sentences of far less than 20 years. *See, e.g., United States v. Delowar Hussain*, 19-CR-606 (S.D.N.Y.) (seven years for intending to travel to Afghanistan to provide material support to the Taliban while American military forces were still present in that country); *United States v. Dakhlalla*, 15-CR-98 (N.D. Miss.) (eight years for conspiracy to travel abroad to join ISIS); *United States v. Ahmed*, 15-CR-49 (D. Minn.) (10 years for attempting to travel to Syria to join and fight with ISIS).

The government neither addresses nor explains away any of these cases, or what they demonstrate–that the sentence Mr. Ahmed requests is far more proper for his offense than the 20 years guidelines sentence requested by the government. Instead, the government cites two Eastern

---

[3] And even these sentences are on the high side. *See, e.g., United States v. Samantha El Hassani*, 19 CR 159 (N.D. Ind.) (sentencing Ms. El Hassani, who entered Syria, married an ISIS member, and recruited others to join ISIS, including women used by defendant as slaves, to 6-1/2 years in prison); *United States v. Thavaraja*, 740 F.3d 253, 260 (2d Cir. 2014) (nine-year sentence where defendant supported terrorist organization "for more than six years … by purchasing on its behalf more than $20 million in deadly merchandise ... used to injure, murder, maim, not only military but civilians"); *United States v. Stafford*, 2016 U.S. Dist. LEXIS 142752 (N.D. Ohio 2016) (ten years for attempting to blow up bridge located just outside Cleveland, Ohio as part of domestic terrorist cell).

District cases–*United States v. Ali Saleh*, No. 15-CR-517 (WFK) and *United States v. Redzepagic*, 17-CR-228 (DRH)–which are readily distinguishable from Mr. Ahmed's case. (Dkt. No. 56 at 7). If anything, these two cases further illustrate why a Guidelines sentence, or any sentence longer than the requested sentence, would be inappropriate here.

In *Saleh*, the defendant attempted 6 times to travel to the Middle East to join ISIS; he also assisted others in traveling to Syria, even wiring one ISIS supporter $500 to assist with his travel. *See United States v. Saleh*, No. 15-CR-517 (WFK) (Memorandum & Order, Dkt. No. 160 at 5-7). Saleh also purchased fireworks containing nearly 2 kilograms of explosive powder in Indiana—enough to build a pressure cooker bomb—and attempted to transport them to New York City. *Id*. at 6. Further, and perhaps most relevant here, during his presentence detention at MDC Brooklyn, Saleh was "cited on at least 100 separate occasions for committing disciplinary infractions, many of which involved acts of violence." *Id*. at 7-12. According to the government's sentencing letter, between 2015 and 2019, while incarcerated, Mr. Saleh was cited for 69 separate infractions. *See Saleh,* No. 15-CR-517 (WFK) (Gov't Sentencing Letter, Dkt. No. 144 at 17-20).

Saleh routinely kicked and punched officers who engaged with him and once used the back of his head to slam the face of an officer. *Id.* Mr. Saleh was prosecuted for one of the many assaults he committed while in custody. *See United States v. Saleh*, 18-CR-468 (WFK). His conduct in that case involved lacerating an officer's right forearm with an improvised weapon, damaging the officer's radial nerve. After injuring the officer, Saleh smiled at him and said, "I hope you die." The officer subsequently underwent surgery for his wound."[4]

Obviously, the offense conduct committed by the defendant in *Saleh* was more serious than

---

[4] Press Release, US Dep't of Justice, (Nov. 17, 2021) accessed at https://www.justice.gov/usao-edny/pr/queens-man-sentenced-30-years-prison-attempting-provide-material-support-isis-and

Mr. Ahmed's conduct. Not only did Saleh attempt to travel to Syria, he helped and financed others to do so. He also purchased a pack of 48 pyrotechnic mortars (large, tube-fired fireworks described as "artillery shells" on the packaging and containing explosive powder), and other explosive materials, intending to build a bomb. His plan was only thwarted when his car broke down on the way back to New York City. Most relevant here is that Saleh exhibited no remorse or rehabilitation after his arrest, instead continuing his violent ways unabated. In this way he is the diametric opposite of Mr. Ahmed and the sentence he received is hardly relevant here.

In *Redzepagic*, defendant Redzepagic tried to enter Syria to join ISIS twice–once in July 2015 from Turkey and once in August 2016 from Jordan. *United States v. Redzepagic*, 17- CR-228 (DRH) (Govt. Sentencing Letter, Dkt. No. 140 at 5-7). And, unlike Mr. Ahmed here, Redzepagic never exhibited any remorse or evidence of rehabilitation post-arrest. To the contrary, "while in custody, the defendant [Redzepagic] has continued to express extremist, anti-Semitic and anti-American sentiments." *Id.* at 8.

The Court should impose the requested sentence, which totals over 12 years in prison and supervised release time, because it fully accords with other sentences imposed for efforts to join ISIS in Syria.[5] This is particularly true given Mr. Ahmed's youth, lack of criminal history, obvious contrition, and demonstrated rehabilitation and attendant low risk of reoffending.

Finally, the government contends that a guidelines sentence is somehow preferred in

---

[5] To justify sentencing Mr. Ahmed to 20 years, the government continues to allege that Mr. Ahmed led or recruited his traveling companion. (Dkt. No. 56 at 6). As previously explained (Dkt. No. 54 at 7), neither Mr. Ahmed nor the person he traveled to Jordan with can accurately said to have led or recruited the other. They hatched the plan between themselves, with neither playing a dominant or leadership role, and were arrested together in Jordan. Notably, the only evidence of Mr. Ahmed's supposed leadership proffered by the government is that Mr. Ahmed and the other person wrote their joint martyrdom letter on Mr. Ahmed's phone. (Dkt. No. 56 at 6). This lone factoid is insufficient to support the government's leadership speculation. In fact, what the government calls a "joint martyrdom letter" was only a letter from Mr. Ahmed to his family explaining what he had done and was not intended to be publicized.

terrorism cases. (Dkt. No. 56 at 7-8 quoting *United States v. Mumuni Saleh*, 946 F.3d 97, 112-113 (2d Cir. 2019)). The government is wrong. Sentencing in terrorism-related cases involves the same analysis as any other case. Even in the snippet quoted by the government, the Second Circuit affirms that (i) the guidelines are "only advisory"; (ii) terrorism is a particular threat because of the "difficulty of deterring and rehabilitating the criminal" – a concern that does not exist here where Mr. Ahmed already has been deterred and rehabilitated; and (iii) a guidelines sentence is reasonable only "if supported by the balance of § 3553(a) factors." Here, of course, all the 3553(a) factors counsel against a guidelines sentence and in favor of the requested non-guidelines sentence. *See* Dkt. No. 54.

## CONCLUSION

The government contends, despite all evidence to the contrary, that a "Guidelines sentence is necessary both to prevent this defendant from engaging in future terrorist activity and to deter others from attempting to do the same." (Dkt. No. 56 at 1). This is wrong. Because Mr. Ahmed has rehabilitated and will not re-offend, he requires no additional prison time. Likewise, the requested non-guidelines sentence of the over five years already served (in deplorable conditions), followed by an additional seven years of supervised release, is a serious 12-year sentence that will still serve to deter others. Indeed, the best general deterrence would result from recognizing Mr. Ahmed's rehabilitation and having him out in his community condemning violent extremism.

For these reasons, and the other reasons discussed, the Court should sentence Mr. Ahmed to time served and an additional seven years of supervised release.

*United States v. Parveg Ahmed*
December 16, 2022

Thank you for your attention to this matter.

                                                                        Respectfully submitted,

                                                                              /s/

                                                      _____
Michael K. Schneider
Federal Defenders of New York, Inc.
1 Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
(718) 330-1161

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490

*Attorneys for Mr. Parveg Ahmed*

cc:     Clerk of the Court (by ECF)
       Mr. Craig Heeren, Assistant U.S. Attorney (by ECF and email)
       Ms. Meredith A. Arfa, Assistant U.S. Attorney (by ECF and email)
       Mr. Parveg Ahmed (by hand)